IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
─────────────────────────────────────

UNITED STATES OF AMERICA

       -v-                              09-CR-96-S

ALEX KOSCHTSCHUK, <u>et al.</u>,

          Defendants.
─────────────────────────────────────


**MOTION TO RECONSIDER THE MAGISTRATE JUDGE'S DECISION AND ORDER
REFUSING TO CONSIDER GRAND JURY MATERIALS**


    The United States of America hereby moves this Court pursuant
to 28 U.S.C. § 636(b)(1)(A), to reconsider the Order of United
States Magistrate Judge Jeremiah J. McCarthy, dated October 31,
2011, finding that the government willfully disobeyed an order of
the Court and stating that the Court would refuse to consider the
materials which the government provided to the Court on October 24,
2011, in adjudicating the defendants' motions to dismiss Counts 8
and 9 of the Third Superseding Indictment.  For the reasons set
forth below, the Magistrate Judge's Order is clearly erroneous and
contrary to law.  Accordingly, this Court should issue an order
correcting the Decision and Order.


**BACKGROUND**


    Defendants are charged in a Third Superseding Indictment which
alleges various violations of Titles 18 and 26 of the United States

Code, and seeks the forfeiture of certain real and personal property and firearms. On September 28, 2010, defendant Martin Whiteford moved for suppression of evidence obtained by the government through the execution of electronic eavesdropping warrants. (Docket Item # 368). On October 25, 2010, defendant Alan Segool, purportedly on behalf of all defendants, moved to dismiss the Third Superseding Indictment, alleging outrageous government conduct in the investigation, grand jury presentation and prosecution of this case. (Docket Item # 386). The claims of outrageous government conduct were based, <u>inter alia</u>, on a supposition that two sworn statements of FBI Special Agent Kenneth Jensen, Jr. concerning the conduct of confidential source David Ignaziak on August 20, 2008, indicated that the government knew of misconduct by Ignaziak and was complicit in it.

On March 10, 2011, the Magistrate Judge issued a Decision and Order in which he ordered that an evidentiary hearing be held to determine whether there was a basis for the defendants' claims of outrageous government conduct. (Docket Item # 466). While recognizing that the defendants' burden on the issue was very heavy (<u>id.</u>, at 6), the Magistrate Judge deemed a hearing necessary to explore "[t]he government's level of knowledge, involvement with, and approval of Ignaziak's actions. . . ." (<u>Id.</u>, at 8). The Magistrate Judge also ordered that a <u>Franks</u> hearing be held based

on the defendants' "substantial preliminary showing that SA Jensen's representations concerning Ignaziak's involvement in the August 20 assault may have been deliberately or recklessly false," and supposed that if SA Jensen recklessly relied on Ignaziak's statements that "the questions which have arisen regarding Ignaziak's truthfulness and reliability may infect the entire warrant application." (Id., at 10). The hearing was conducted on April 27, 29 and June 15, 16, and 17, 2011.

On June 30, 2011, defendant Whiteford moved to expand the scope of the hearing to include inquiry into the proceedings conducted before the grand jury, alleging that SA Jensen and AUSA Anthony Bruce had misled the grand jury as to Ignaziak's role in the events of August 20, 2008. (Docket Item # 549). Specifically, the defendant asserted that AUSA Bruce, "conceal[ed] David Ignasiak's criminal culpability in connection with the attack, thereby depriving the grand jury of the right to determine whether or not to indict Ignasiak" (¶ 20) which amounted to "prosecutorial misconduct" (¶ 23). According to the Magistrate Judge''s Decision and Order, the basis for that assertion and the expansion of the hearing was:

> the following question and answer offered to the grand jury on April 28, 2009, by AUSA Anthony Bruce and FBI Special Agent Kenneth Jensen, Jr., relative to the involvement of

> government informant David Ignasiak in an
> August 20, 2008, assault on Eugene Siminski:
>
> Q: My understanding, Mr. Ignasiak
> was along for the ride but did not
> participate in the incident?
> A: Yes, in a manner of speaking.
> (Docket Item # 602, at 1).

The government opposed defendants' motion by, inter alia, providing the Magistrate Judge ex parte and under seal, on or about July 14, 2010, the grand jury transcripts of two (2) witnesses, called to the grand jury by AUSA Bruce prior to the return of the now pending indictment, who each had personal knowledge of and testified extensively about Ignasiak's role in the August 20th Siminski assault. (Docket Item #560, at 5-11).

By Decision and Order dated August 1, 2011, the Magistrate Judge granted the defendants' motion and ordered that the government produce for his in camera inspection, all portions of the grand jury proceedings which in any way related to the incident of August 20, 2008. The Magistrate Judge set a date of August 22, 2011, for such production. (Docket Item # 575, at 10). By text order dated August 23, 2011, the Magistrate Judge extended the date for production through September 23, 2011, based on the parties' joint motion. (Docket Item # 579). On September 23, 2011 a second motion was filed to extend the deadline (Docket Item # 582), and by text order entered the same day, the unopposed motion was granted

-4-

and the deadline extended through October 7, 2011. (Docket Item # 583). On October 7, 2011, the government again moved to extend the production date (Docket Item # 587), and again on the same day the Magistrate Judge issued a text order stating that because not all defendants consented to the motion, it was granted in part and denied in part, and the date for production was extended through October 21, 2011. (Docket Item # 588). The text order also said that "[a]bsent truly compelling reasons, no further extensions will be granted." (Id.).

On Friday, October 21, 2011, at approximately 4:30 p.m., the government filed a further request to extend the deadline for producing the grand jury materials. At 4:59 p.m., the Magistrate Judge issued a text order denying the government's motion, stating that "no 'truly compelling' reasons have been shown for a further extension." (Docket Item # 593). At approximately 9:30 a.m. on Monday, October 24, 2011, the government delivered the items called for in the Magistrate Judge's August 1, 2011, Order to the Magistrate Judge for his in camera review. That same day, the Magistrate Judge issued a text order inviting the parties to address in writing "whether I should reject as untimely the grand jury materials" provided to the Court by the government on October 24. (Docket Item # 595).

The government responded on October 25, 2011, advising the Court that since the entry of the Magistrate Judge's August 1 order, the parties had engaged in intensive plea negotiations aimed toward a global disposition of the charges pending against all defendants. The government advised that the negotiations had been time-consuming and highly sensitive, but that, insofar as a successful global plea deal would save considerable judicial and prosecutorial resources, the pendency of the negotiations continued to constitute a truly compelling reason to further adjourn the date by which the grand jury materials were to be produced. Further, the government advised the court that it honestly was unsure whether the October 21 deadline date was a typographical error, as the government had requested in the October 7 motion an extension through and including October 31, and all the previous extension orders had granted the government the full period of time it had requested.

On October 31, 2011, Magistrate Judge McCarthy issued a Decision and Order in which he found that the government had "made a calculated decision not to comply with my Text Order as written, [and] must now face whatever consequences flow from that decision." (Docket Item #602, at 6). As a result, the Magistrate Judge concluded that he had "no qualms whatsoever in refusing to consider the belatedly-produced materials." (Id., at 7). In addition, the

Decision and Order indicated that the judge was "leaning toward inferring that the materials would have been adverse to the government," (id., at 9), and set a schedule for the parties to address the issue.

Insofar as the Magistrate Judge's Decision and Order is clearly erroneous and contrary to law, this Court should reconsider it, and deny the defense motions in their entirety.

**ARGUMENT**

**A.    Standard of Review**

Where a magistrate judge has the authority under 28 U.S.C. § 636(b)(1)(A) to hear and determine a pretrial matter, this Court "may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."

**B.    Discussion**

The Magistrate Judge begins his analysis by observing that "[t]he importance of the grand jury materials cannot be overstated," and that "[a]bsent a review of those materials, it

would be difficult - if not impossible - for me to conclude that the grand jury testimony offered by AUSA Bruce and SA Jensen on April 28, 2009 did not undermine the independence of the grand jury . . . ." (Docket Item #602, at 5).

At the outset, the government respectfully submits that the Magistrate Judges's entire premise is flawed as he invokes the supervisory authority of the court to consider the import of a single question posited by AUSA Bruce and answer given by SA Jensen before the grand jury on April 28, 2009. According to the Magistrate Judge, such exchange may well have endangered the very independence of the grand jury. In United States v. Williams, 504 U.S. 36, 46 (1992), the Supreme Court recognized that where misconduct occurring before the grand jury amounts to a violation of one of those "few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions" the supervisory authority of the Court may be invoked. None of those rules are implicated here. See, United States v. Williams, 504 U.S. at 46 n. 6(listing the sorts of violations for which supervisory authority powers might be invoked, such as presence of third parties during voting, violation of disclosure rules, etc.). Significantly, the Williams Court recognized that while the courts' supervisory power can be used, as a means of enforcing or vindicating legally compelled standards

of prosecutorial conduct before the grand jury, it can not be used "as a means of prescribing those standards of prosecutorial conduct in the first instance-just as it may be used as a means of establishing standards of prosecutorial conduct before the courts themselves." United States v. Williams, 504 U.S. at 46-47. Even assuming, for sake of argument, that the exchange between AUSA Bruce and Agent Jensen fits within the very narrow sort of conduct for which the court's supervisory authority may properly be invoked, there is no need for the Court to do so here.

Indeed, the Supreme Court has noted the supervisory powers of the court need not be invoked where, as here, any error to be remedied is harmless. United States v. Hasting, 461 U.S. 499, 506-507 (1983); see, Bank of Nova Scotia v. United States, 487 U.S. 250, 254-255 (1988) ("We now hold that a federal court may not invoke supervisory power to circumvent the harmless-error inquiry prescribed by Federal Rule of Criminal Procedure 52(a). Rule 52(a) provides that '[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.'"); see also, United States v. Williams, 504 U.S. at 46 (dismissal of the indictment is unwarranted under court's supervisory authority where defendants can not establish a "violation of one of the 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's

functions.'"(quoting United States v. Mechanik, 475 U.S. 66, 74 (1986)).

In this instance, in addition to assuming *arguendo* that the issue is otherwise ripe for the exercise of the court's supervisory authority and further assuming *arguendo* that AUSA Bruce's question to the witness, beyond being poorly worded, was misleading and improper, the uncontroverted evidence before the Magistrate Judge and this Court was and is that prior to the return of the indictment at issue, AUSA Bruce did present to the Grand Jury, testimony from two witnesses each of whom had first-hand knowledge and each of whom testified extensively about Ignasiak's role in the August 20th assault. Those witnesses, who testified before the Grand Jury on May 19 and August 11, 2009, each told the Grand Jury about Ignasiak's involvement in the attack, and the Magistrate Judge had transcripts of their testimony since no later that July 14, 2010. See, Docket Item #560, pp. 5-11.

During Witness 1's grand jury appearance, he related the following about Ignasiak's participation in the August 20 assault on Eugene Siminski: that he received a call from Ignasiak directing him to come to the clubhouse and when he arrived others were already there. In the ensuing discussions, "Dave took it upon himself, not 100 percent sure, Dave was running the meeting and

giving instructions as to the game plan, what we were going to be doing, tonight's activity and surveillance on the Kingsmen . . . the plan was to pick up the car, go with that team and go to certain areas of the city to look for Kingsmen."  Later, "Bradley Beutler and David Ignasiak wanted [to 'bull rush' the] Black Dog [Bar and] wanted to have the game plan [of the other car] and personally wanted [one of the other participants] go to the Black dog and basically start a fight while they came up in their car behind [the participant] to assault the Kingsmen."  Later, as the participants discussed the assault on Siminski,  Whiteford and Beutler related to Witness 1 that "Dave was behind Martin and swung but didn't hit [Siminski]."

Similarly, Witness 2 testified before the Grand Jury on August 11, 2009.  During Witness 2's appearance, he related the following about Ignasiak's participation in the August 20 assault on Eugene Siminski:  That Alex Koschtschuk "had put [Ignasiak] in charge of the operation [and Ignasiak] made the[ ] designations" of who went in what car, and "Ignasiak had the [disposable] cell phone."  Witness 2 further stated, that when the assault occurred, "Marty, Brad and Dave [Ignasiak] got out of the vehicle and ran towards [Siminski] . . . From there, Brad and Dave made an attempt hit him with the weapons that they were carrying which I believe Dave had a bat.  Marty had a blade and the other had an axe handle.  Brad

and Dave got up on [Siminski], took a swing and missed . . . Martin

Whiteford had this axe handle . . . [he] lunged at the back of

[Siminski] striking him on the back of the neck."


As the Supreme Court has stated:


> In the exercise of its supervisory authority,
> a federal court "may, within limits, formulate
> procedural rules not specifically required by
> the Constitution or the Congress." <u>United
> States v. Hasting</u>, 461 U.S. 499, 505 (1983).
> Nevertheless, it is well established that
> "[e]ven a sensible and efficient use of the
> supervisory power ... is invalid if it
> conflicts with constitutional or statutory
> provisions." <u>Thomas v. Arn</u>, 474 U.S. 140, 148
> (1985). To allow otherwise "would confer on
> the judiciary discretionary power to disregard
> the considered limitations of the law it is
> charged with enforcing." <u>United States v.
> Payner</u>, 447 U.S. 727, 737 (1980). Our previous
> cases have not addressed explicitly whether
> this rationale bars exercise of a supervisory
> authority where, as here, dismissal of the
> indictment would conflict with the
> harmless-error inquiry mandated by the Federal
> Rules of Criminal Procedure.
>
>     We now hold that a federal court may not
> invoke supervisory power to circumvent the
> harmless-error inquiry prescribed by Federal
> Rule of Criminal Procedure 52(a). Rule 52(a)
> provides that "[a]ny error, defect,
> irregularity or variance which does not affect
> substantial rights shall be disregarded."


<u>Bank of Nova Scotia v. United States</u>, 487 U.S. 250, 254-255 (1988).

Here, the Magistrate Judge committed legal error by deciding, based

upon a single question and answer, to invoke the Court's

supervisory authority to scrutinize the entire grand jury presentation in this case without ever considering whether any error in such question and answer may have been harmless, which, in this instance, it most assuredly was, since the uncontroverted proof presented to the Magistrate Judge and available to this Court establishes that grand jury, prior to the return of the indictment, had before it the full scope of the government's evidence regarding Ignasiak's involvement in any assault. Id.; see also, United States v. Williams, 504 U.S. at 49-50 ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure. Over the years, we have received many requests to exercise supervision over the grand jury's evidence-taking process, but we have refused them all").

Moreover, by ruling that he will not consider the materials provided to him by the government, the Magistrate Judge is in essence proposing that the findings of the grand jury essentially be disregarded and that the record of what truly occurred before the grand jury simply be ignored. Interestingly, the Magistrate Judge supports his conclusion by selectively extracting language from civil cases and by relying on such language to support the result he favors without even considering the context in which such

language was actually used.  The government respectfully submits that there is a reason for the dearth of criminal cases which support the position he takes.  Surely, this is not the first instance in which a prosecutor has asked a poorly worded or even improper question to a witness before the grand jury or in which the government, good faith or not, turned over discovery materials the day after they were due.

Moreover, even the cases upon which the judge relies to support his decision not to consider the grand jury materials caution that a judge's discretion to impose a harsh discovery remedy must be tempered by the "[s]trong public policy [which] favors resolving disputes on the merits." American Alliance Ins. Co., Ltd., 92 F.3d 57, 61 (2d Cir. 1996). Cf. Brien v. Kullman Industries, Inc., 71 F.3d 1073, 1077 (2d Cir. 1995)(scope of district court's discretion in denying a motion to vacate a default judgment is limited by the "preference for resolving disputes on the merits"). See also Burns v. Imagine Films Entertainment, Inc., 198 F.R.D. 593, 597 (W.D.N.Y. 2000), quoting McDonald v. Mabee, 243 U.S. 90, 91 (1917)("'great caution should be used not to let fiction deny the fair play that can be secured only by a pretty close adhesion to fact'").  The Magistrate Judge's decision that he

will not consider the materials provided by the government flies directly in the face of that policy.[1]

Furthermore, the Magistrate Judge's inclination "toward inferring that the materials would have been adverse to the government," (Item # 602, at 9), would exacerbate this tension with the policy, and is usupported by precedent.  The Decision and Order cites language from Savard v. Marine Contracting Inc., 471 F.2d 536, 541 (2d Cir. 1972), and United States v. Philatelic Leasing. Ltd., 601 F. Supp. 1554, 1565-66 (S.D.N.Y. 1985), to support its conclusion that such an inference is appropriate.  However, both those were civil cases, in which the appropriateness of an adverse inference was discussed where a party failed to produce evidence at trial.  It would be an abuse of discretion to employ such an

---

[1] To be sure, there are criminal cases which have expressly addressed how a Court might appropriately handle what it perceives to be improper conduct by a prosecutor.  United States v. Hasting, 461 U.S. at 506, n.5.  Potential remedies include the commencement of an OPR investigation against such prosecutors and/or publically chastising the prosecutors by identifying them in his  opinion. Id.  Magistrate Judge McCarthy's accusations that the prosecutors "engaged in a "deliberate violation" of a court order and engaged in "disobedience" in this case have already resulted in the mandatory self-reporting of such finding to the Department of Justice Office of Professional Responsibility.  Moreover, such language provided the basis for their public chastisement, by name, in the Buffalo News.  See, Judge Raps Chosen Few Prosecutors, *Buffalo News*, November 5, 2011. Notwithstanding the fact that the Magistrate Judge has already availed himself of those remedies, he seeks to head into the unprecedented waters of drawing inferences to be used to disregard the work of the grand jury. Notably, no defendant has even suggested much less requested that such a course should be undertaken by the Court.

inference here, where the relevant materials exist from which the Court can make the determination, and such materials have actually been produced.

Moreover, although in hindsight the government may have handled this situation differently, its conduct here simply was not sufficiently egregious to justify casting aside the relevant evidence produced by the government, or to employ a fiction that the record grand jury proceedings would support the hypothesis of misconduct set forth by the defense. The Decision and Order states that "the government elected to play Russian roulette" (Item #602, at 6), and decided to "roll the dice that I would extend the deadline yet again." (id., at 7). However, the October 7 text order did not forbid a further motion to extend the deadline, but rather, said that an extension would not be granted "[a]bsent truly compelling reasons." The government set forth its reasons for requesting another extension, most notably, the desire not to upset difficult and complicated negotiations which, if successful, would save considerable resources in further litigating this case. It is not unheard of in this District, for a Judge to grant even untimely motions for relief from a scheduling order, even where the scheduling order had stated unequivocally that "no extensions" would be granted and where the reasons cited by counsel for failure to comply with the deadline were entirely inadequate "and

border[ed] on arrogance," where the further submission "would assist [the Court] in deciding the motion." <u>See</u> <u>United States v.</u> <u>Larson</u>, 07-CR-304-S, Docket Item # 261).[2]    Given this, the government's good faith judgment that the reasons it proffered were compelling enough to submit a further request to the Court, *and its decision to submit such a request*, was not, as the Magistrate Judge characterized it, "a calculated decision not to comply with my Text Order as written." (Item #602, at 6).  The Decision and Order's colorful allusions to reckless gambling notwithstanding, the government's decision to address a permissible motion to the sound discretion of a federal judge is not akin to irresponsibly throwing one's fate to the vicissitudes of chance.

The Decision and Order also belittles the government's claim that it had doubts about whether the disclosure deadline was a typographical error, and suggests that the government should have reached out to the Magistrate Judge's chambers <u>ex</u> <u>parte</u> for clarification. (Item #602, at 6).  Of course, such a communication

---

[2] Notwithstanding the government's view that the Magistrate Judge's decision to exercise his supervisory authority to review the entire grand jury presentation in this case is unwarranted as the uncontradicted evidence before him established that an impropriety or error in the exchange between AUSA Bruce and FBI SA Jensen was is wholly unwarranted as any error was harmless, the materials provided by the government are in the words of the Magistrate Judge himself, not merely "helpful."  Instead, the Judge McCarthy has himself observed that an accurate determination would be "difficult - if not impossible" without them. (Docket Item # 602, at 5).

would have been an improper communication with the Court.  The government is particularly wary about engaging in such informal communications with the Court, especially in light of the fact that the defense has previously complained in this case that the government has impermissibly communicated with the Court ex parte.

Furthermore, the Decision and Order relies on cases which are inapposite or factually distinguishable.  First, as already noted, all are civil cases involving either discovery disputes or analysis of whether reasons proffered by a defaulting party were sufficient to establish "excusable neglect."  Second, the conduct described in those cases is a far cry from the government's actions in this case.  For example, in Burns v. Imagine Films Entertainment, Inc., 198 F.R.D. at 601, this Court catalogued the defendants' systematic disobedience of the Court's discovery orders in finding that severe sanctions were appropriate:

> Defendants refused to turn over considerable documentation with regard to one of the central issues in this case.  They persisted in defying this Court's orders for more than a year, even after this Court rendered its initial sanction.  Defendant made a strategic decision to disobey this Court's orders, to further their over-all goals in this litigation.  And, when that strategy of disregarding this Court's discovery orders ran its course, the evidence suggests that the summary data that Defendants provided was misleading, and possibly false.

In contrast, the government did not here disobey or defy the Magistrate Jude's order.  It did nothing misleading or dishonest.

-18-

Its delay in producing the materials, after the Magistrate Judge denied its motion, amounted to less than one hour of a business day.

Finally, it is worth noting that because of the unsupported conclusions in the Decision and Order that the actions of Assistant United States Attorneys James P. Kennedy, Jr., and Anthony M. Bruce amounted to "a calculated decision not to comply with my Text Order" (Item # 602, at 6), "a conscious decision to disobey my order" (id., at 7), "a deliberate violation of a court order" (id., at 8), and a "deliberate decision not to produce grand jury materials" that was "clearly willful," (id., at 9), this Office has, at it is obligated to do when such findings are made, self-reported the Magistrate Judge's conclusions to the Department of Justice's Office of Professional Responsibility. That Office will review the actions of these attorneys and determine whether the conduct might warrant some sort of disciplinary action. As argued above, the Magistrate Judge's reached these conclusions of misconduct based on conduct that was no more than an exercise of professional judgment by these attorneys that a fairly routine motion for an extension of time was appropriate, which motion was permissible pursuant to the language of the text order.

-19-

As such, the Magistrate Judge's findings of a deliberate violation of a court order and his decision to not to consider evidence directly relevant to the disputed issue were clearly erroneous, and this Court should issue an order correcting them.

**CONCLUSION**

For the foregoing reasons, this Court should reconsider the Magistrate Judge's Order in this case and conclude that it is clearly erroneous and contrary to law and: (1) reverse the Magistrate Judge's decision further to review the grand jury proceedings in this case without first conducting a harmless error analysis; and (2) reverse the findings that the government deliberately disobeyed his order. Alternatively, if the Court determines that the Magistrate Judge ought further to review the grand jury proceedings in this case, this Court should direct the

Magistrate Judge to consider all of the materials provided by the government.

DATED:  Buffalo, New York, November 14, 2011.

WILLIAM J. HOCHUL, JR.
United States Attorney


BY:  s/JAMES P. KENNEDY, JR.
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York  14202
(716)843-5892
JP.Kennedy@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――
                                    :
UNITED STATES OF AMERICA,
                                    :
         -v-                             09-CR-96-S
                                    :
AKLEX KOSCHTSCHUK, et al,
                                    :
                   Defendants.      :
―――――――――――――――――――――――――――――

### <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on November 14, 2011, I electronically filed the foregoing **MOTION TO RECONSIDER THE MAGISTRATE JUDGE'S DECISION AND ORDER REFUSING TO CONSIDER GRAND JURY MATERIALS** with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participant on this case:

John J. Molloy, Esq.
Terry Granger, Esq.
Alan S. Hoffman, Esq.
John K. Jordan, Esq.
Angelo Musitano, Esq.
Lawrence J. Desiderio, Esq.
Joseph M. LaTona, Esq.
Patrick J. Brown, Esq.
Robert N. Convissar, Esq.
David R. Addelman, Esq.
Michael O. Morse, Esq.
Paul G. Dell, Esq.
David B. Cotter, Esq.
David K. Silverberg, Esq.
Paul J. Cambria, Jr., Esq.
A. Joseph Catalano, Esq.
Cheryl Meyers-Buth, Esq.
Joseph A. Agro, Esq.
Paul S. Piotrowski, Esq.                    s/KAREN S. BARONE